RUBY MARSH, Adm'r of the Estate of Willie Faye Marsh, Deceased, *et al.*, Plaintiffs-Appellants, v. WILLIAM J. McNEILL *et al.*, Defendants-Appellees.

Third District   No. 3—84—0056

Opinion filed September 9, 1985.

Terry K. McClellan, of Romeoville, for appellant.

Roger D. Rickmon, of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellee William J. McNeill.

Cory D. Lund, of Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet, for appellee Sheila Marsh.

JUSTICE BARRY delivered the opinion of the court:

This case arose out of a collision that occurred on March 26, 1980, between a semi-truck and trailer owned and driven by William McNeill and a car driven by Sheila Marsh. Willie Faye Marsh, Sheila's mother, was a passenger in the car and died 17 days later as a result of injuries sustained in the collision. Sherrie Marsh, Sheila's sister, was also a passenger in the car and was injured in the collision.

On March 22, 1982, a multicount complaint against William McNeill and Sheila Marsh was filed in the circuit court of Will County. The complaint was brought by Ruby Marsh, as administratrix of the estates of Willie Faye Marsh and Jerry Marsh (Willie's husband), and by Sherrie Marsh. Jerry Marsh died approximately one year after his wife's death of unrelated causes. Counts I, III, V, and VII alleged negligence on the part of McNeill. Counts II, IV, VI, and VIII alleged negligence on the part of Sheila Marsh. McNeill, in turn, filed a third-party complaint against Sheila Marsh pursuant to the provisions of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*).

Prior to trial, the court granted Sheila's motion to dismiss all counts brought against her on the ground that they were barred by the parent-child immunity doctrine. At the close of the plaintiffs' case, the trial court also granted a directed verdict in favor of McNeill against Ruby Marsh, as administratrix of the estates of Willie Marsh and Jerry Marsh, and against Sherrie Marsh. It is from these rulings of the trial court that the plaintiffs appeal.

While the plaintiffs have raised six contentions on appeal, we find that these contentions may be reduced to the following two issues. First, whether the trial court erred in granting a directed verdict in favor of William McNeill. Second, whether the trial court erred in granting Sheila Marsh's motion to dismiss all counts brought against her on the ground that they were barred by the parent-child immunity doctrine.

As to the first issue, it is well established that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Where no substantial factual dispute exists, a trial court will direct a verdict "in order to promote the efficient and expeditious administration of justice ***." 37 Ill. 2d 494, 504, 229 N.E.2d 504, 510.

In this case, the collision occurred at the intersection of Frontage Road and Renwick Road in Will County. McNeill was driving eastbound on Renwick Road and Sheila Marsh was driving her parents' car southbound on Frontage Road. Only southbound Frontage Road is controlled by a stop sign. McNeill testified that he first observed Marsh's car when he was 300 feet away from the intersection. He was traveling at approximately 45 miles per hour. The car approached the stop sign and came to a complete stop when he was approximately 200 feet away. The car then pulled ahead two or three feet, but came to a complete stop again. In response, McNeill lifted his foot off the accelerator. He was about 100 feet from the intersection at the time and was traveling at 40 miles per hour. Then, as he was approximately 50 feet away, the car started to cross the intersection.

McNeill attempted to avoid a collision by applying his brakes, either at the same time as impact or a quarter of a second before impact, and also by turning his truck to the right. He did not, however, sound his horn. His speed at the time of the collision was 30 miles per hour. The trial court took judicial notice that a vehicle moving at that speed would travel 44 feet per second. McNeill indicated that only five or six seconds elapsed between the time he first saw the car and the collision and that he observed the car during the whole period.

Sheila Marsh testified that she pulled up to the stop sign and stopped. Her view was not obstructed in either direction. She looked to her right, to her left, to her right again and then proceeded into the intersection. It was at that time that she first saw the truck and a second or less later the collision occurred. Sherrie Marsh also testified. However, she could not remember whether Sheila stopped the car a second time before proceeding into the intersection.

The only significant difference between the testimony of McNeill and Sheila was in regard to the number of times she stopped before proceeding into the intersection. McNeill testified at trial that the car stopped twice. However, he had testified at the coroner's inquest that the car pulled up to the stop sign, stopped, and then slowly eased out.

He assumed that the car was just getting ready to cross the intersection after he passed. Sheila Marsh testified that she could not "remember stopping a second time" and that she "didn't stop a second time."

The plaintiffs contend that a question of fact existed regarding the number of times that Sheila Marsh stopped before proceeding into the intersection. They maintain that this question of fact was critical to the question of liability and was improperly decided by the trial court when it granted McNeill's motion for a directed verdict. We disagree.

Regardless of whether she stopped once or twice, the testimony is uncontradicted that she pulled in front of McNeill and did so when he was only 50 feet away. As mentioned above, Sheila indicated that the collision occurred within a second after she began to cross the intersection. McNeill testified that his speed at the time of the collision was about 30 miles per hour. As aforesaid, the court took judicial notice that he would have been traveling 44 feet per second. Since southbound Frontage Road is controlled by a stop sign, McNeill was driving on a preferential highway. Thus, it was Sheila's duty to stop and then to yield the right-of-way to any vehicle approaching so closely as to constitute an immediate hazard to her proceeding across or into the intersection. (Ill. Rev. Stat. 1979, ch. 95½, par. 11—904(b).) She simply failed to do so.

The plaintiffs contend that McNeill was negligent in not sounding his horn prior to impact. (Ill. Rev. Stat. 1979, ch. 95½, par. 12—601.) Initially, we note that McNeill's failure to do so did not constitute negligence *per se*. (*Daly v. Bant* (1970), 122 Ill. App. 2d 233, 240, 258 N.E.2d 382, 385.) Furthermore, it is understandable that it was because Sheila pulled in front of McNeill when he was only 50 feet away that he was unable to sound his horn at the same time he was swerving and attempting to apply his brakes.

The plaintiffs also contend that McNeill was negligent in not applying his brakes prior to impact. However, McNeill testified that he applied his brakes either at the same time as or a quarter of a second before impact. Again, it was only because Sheila pulled out when he was so close to the intersection that McNeill was unable to apply his brakes in time. Furthermore, as was stated in *Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill. App. 2d 65, 74, 235 N.E.2d 17, 22:

> "Stop signs are erected for the obvious purpose of requiring motorists to yield to vehicles on through highways. If the motorist on the through highway had to travel at such a speed that he could stop his car in time to avoid collisions with vehi-

cles which ignore stop signs on intersecting roads, the purpose of having a through highway in the first place would be entirely thwarted. The driver who has the stop sign cannot assume the car on the through highway will stop. It is the other way around."

Thus, whether Sheila Marsh stopped once or twice, the sole cause of the collision was the fact that she drove her car directly into the path of McNeill's truck under circumstances that afforded him no opportunity to avoid the collision. We believe that under these facts it may be fairly stated that all the evidence, when viewed in its aspect most favorable to the plaintiffs, so overwhelmingly favors McNeill that no contrary verdict based on the evidence could ever stand. We hold, therefore, that the trial court properly granted McNeill's motion for a directed verdict.

The second issue is whether the trial court erred in granting Sheila's motion to dismiss all counts against her on the ground that they were barred by the parent-child immunity doctrine.

The parent-child tort immunity doctrine, sometimes called the parental or family immunity doctrine, was first adopted in Illinois in *Foley v. Foley* (1895), 61 Ill. App. 577. Originally, the doctrine provided that a parent was immune from tort actions brought by his or her unemancipated minor children. (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 968, 435 N.E.2d 221, 224.) The public policy behind the doctrine was to maintain family harmony, to avoid litigation and strife, and to insure a proper atmosphere of cooperation, discipline, and understanding in the family. *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 202, 241 N.E.2d 12, 13.

Since *Foley*, the parent-child immunity doctrine has been modified. In *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 619, 131 N.E.2d 525, 531, our supreme court held that while the doctrine is a bar to suits based on mere negligence, it should not prevent a minor from obtaining redress for wilful and wanton misconduct on the part of a parent. In addition, several exceptions to the doctrine have been created. For example, the doctrine has not been applied where the negligence took place outside the family relationship (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12), or where the defendant parent died after the negligent act (*Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778).

Despite the above modification and exceptions, the courts in Illinois continue to give vitality to the parent-child immunity doctrine. (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 435 N.E.2d 221.) Thus, generally "absent willful and wanton misconduct on the part of

the parents, children may not maintain suits against their parents for mere negligence within the scope of the parental relationship." *Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 236, 403 N.E.2d 1256, 1258.

Three factors must be considered in determining this second issue. First, this case involves a child who is being sued by her parents and by a sibling. Second, Sheila was an unemancipated minor at the time of the collision but was an adult at the time the action was commenced. Third, two of the plaintiffs, Willie and Jerry Marsh, were deceased at the time the action was commenced. However, for the reasons discussed below, we believe that none of these factors constitute a bar to application of the parent-child immunity doctrine under the facts in this case.

■ As to the first factor, we note that the doctrine is usually applied to bar suits by children against their parents. However, it is clear that the public policy behind the doctrine applies equally to suits by parents against their children. Thus, those States which bar suit by one also bar suit by the other. We hold that the parent-child doctrine applies to suits by parents against their children.

The only Illinois case that we have discovered involving a suit by a parent against a child does not dictate otherwise. In *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12, a father sued his unemancipated daughter for injuries sustained when she negligently ran into him with a car while he was walking on the street. The appellate court held that the parent-child immunity doctrine did not apply. However, it reached that decision because the negligent conduct occurred outside the family relationship, not because the doctrine is inapplicable to suits by parents against their children. Here, the collision occurred as Sheila was taking her mother and sister to purchase meat and to a shopping mall. The plaintiffs do not contend that negligent conduct occurred outside the family relationship.

■ As to the second factor, we note that a number of States hold that if a child is unemancipated at the time the alleged tort was committed, then the child may not institute a negligence action even though he or she is either emancipated or has attained majority at the time the action is commenced. (See Annot., 6 A.L.R.4th 1066 (1981).) Although the minor in this case was a defendant rather than a plaintiff, we find that the above principle is applicable. What is important is that the individual was a minor, not whether the individual was a plaintiff or a defendant. Here, Sheila was an unemancipated minor at the time of the collision. While she apparently had reached majority at the time the action was commenced, that does not bar application

of the parent-child immunity doctrine.

The third factor is that both parents, Willie and Jerry Marsh, are deceased. As aforesaid, Willie died of injuries sustained in the collision while her husband died approximately one year later of unrelated causes. The plaintiffs cite *Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778, in support of their contention that the parent-child immunity doctrine should not be applied in this case. In *Johnson*, the issue was whether the doctrine barred an action by unemancipated minors to recover damages for personal injuries caused by the negligence of a parent in the operation of a car where the parent died subsequent to the injury. The appellate court held that when the family relationship has been dissolved by death then the policy behind the doctrine ceases. We agree.

██ However, we do not believe the deaths of Willie and Jerry Marsh bar application of the parent-child immunity doctrine. First, we believe that a suit brought by the administrator of a deceased parent is just as disruptive of family harmony as it would be for a parent himself or herself to bring an action. Second, in *Johnson*, the decedent was also the tortfeasor. Here, the tortfeasor is alive, but two of the plaintiffs are deceased. Third, we note that Sherrie Marsh is not deceased, and so the family relationship between her and Sheila has not been dissolved. Thus, *Johnson* does not bar application of the doctrine to the count brought by Sherrie against Sheila.

We now apply the above discussion regarding the three factors to the individual counts that were brought by the plaintiffs against Sheila Marsh.

██ Count II was brought by Ruby Marsh, as the personal representative of the estate of Willie Marsh, under "An Act requiring compensation for causing death by wrongful act, neglect or default" (Ill. Rev. Stat. 1979, ch. 70, par. 1 *et seq.*). Section 1 provides that when a person's death is caused by a negligent act which would, if death had not occurred, have entitled the injured person to bring an action to recover damages, then the person who would have been liable if death had not occurred, shall be liable for damages even though the injured person died. We have held that the parent-child immunity doctrine does apply to suits by parents against their children. Thus, Willie Marsh could not have sued Sheila for negligence, even if Willie had not died. Therefore, the administratrix could not bring suit on her behalf and the trial court properly dismissed count II.

Count IV was brought by Ruby Marsh, as the personal representative of the estate of Willie Marsh, for physical pain and suffering and mental anguish. Count VI was brought by Ruby Marsh, as the per-

sonal representative of the estate of Jerry Marsh, for funeral, hospital, and doctor expenses. Again, because we have held that the parent-child immunity doctrine applies to suits brought by parents against their children, the trial court properly dismissed counts IV and VI.

Finally, count VIII was brought by Sherrie Marsh for physical injuries and medical and hospital expenses. Sherrie was also an unemancipated minor at the time of the collision. Again we are guided by the fact that one of the main justifications for the parent-child immunity doctrine is the reluctance to create litigation and strife between members of the family unit. (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 619, 131 N.E.2d 525, 531.) We believe that litigation instituted by one sibling against another sibling is just as disruptive of the family unit as suits by parents against their children and suits by children against their parents. Therefore, we hold that the trial court properly dismissed count VIII because a direct family relationship of the siblings was here proved. A different result would prevail given the factual settings of *Schenk* and *Johnson.*

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.