ILLINOIS NURSES ASSOCIATION, Petitioner-Appellant, v. ILLINOIS STATE LABOR RELATIONS BOARD et al., Respondents-Appellees (Correctional Medical Systems, Inc., Intervenor-Appellee).

First District (5th Division)   No. 1—88—2514

Opinion filed March 30, 1990.

---

Sally A. Stix, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for respondents.

Melbourne A. Noel, Jr., of Laser, Schostok, Kolman & Frank, of Chicago, and David W. Miller, of Baker & Daniels, of Indianapolis, Indiana, for intervenor.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by plaintiff, Illinois Nurses Association (INA), from a decision of defendant, Illinois State Labor Relations Board (Board), which refused to take jurisdiction of an unfair labor practice charge made by the INA. Additional defendants include the State of Illinois, its Department of Central Management Services, Department of Corrections (DOC). Correctional Medical Systems (Systems) intervened for the limited purpose of contesting the Board's jurisdiction. Jurisdiction to hear this cause on direct appeal from the Board is pro-

vided by the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1611). Even though the case involves nurses at the downstate Shawnee Correction Center, near Vienna, the Act authorizes an appeal to the appellate court of a judicial district in which the appellant resides or transacts business. Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).

This is the second time this case has been before this court. In *Illinois Nurses Association v. The State Labor Relations Board* (1987), 156 Ill. App. 3d 841, in which Systems was not a party, the Board dismissed INA's unfair labor practice charges for lack of jurisdiction. This court vacated the Board's dismissal order and remanded the matter for further evidentiary proceedings pertaining to the determination of the Board's jurisdiction. Upon remand, an evidentiary hearing was held in September 1987. The hearing officer's recommended order issued in April 1988. He concluded that, although the State and Systems were joint employers, Systems was not a public employer within the meaning of section 3(o) of the Act. Section 3(o) defines "public employer" as including the State of Illinois and its political subdivisions, units of local governments or school districts, agencies of these entities, "and any person acting within the scope of his or her authority, express or implied, on behalf of such entities in dealing with its employees." (Ill. Rev. Stat. 1985, ch. 48, par. 1603(o).) The term "person" includes associations and corporations. Ill. Rev. Stat. 1985, ch. 48, par. 1603(1).

The hearing officer determined that the Board lacked jurisdiction because Systems was not an agent of the State and, thus, could not be a public employer. INA excepted to the finding of no agency, and Systems excepted to the joint employer finding. The Board, based on its own findings of fact, held that since DOC did not exercise any meaningful control over any significant aspects of the nurses' employment, it was not a joint employer with Systems. The Board also held that, pursuant to the Act, a private employer was subject to the Board's jurisdiction only if it was acting as an agent of a public employer and concluded that Systems, as the sole employer, could only be an agent if the nurses were State employees, which they were not. Accordingly, the Board upheld the hearing officer's dismissal of INA's unfair labor practice charge because of a lack of jurisdiction.

It is undisputed that INA is the exclusive bargaining representative for nurses employed by the State, including nurses employed by the State to work at its correctional centers. In 1985, DOC entered into a non-bid contract with Systems, a private corporation licensed to do business in Illinois and based in St. Louis, Missouri. Systems, de-

scribed in the contract as an independent contractor, has contracts to provide health services to correctional facilities in 16 States, including contracts with nine Illinois correctional facilities. Between April 1985 and June 1986, Systems was compensated on a cost-plus plan and provided all health care staff at Shawnee except for the Health Care Unit Administrator, who was a DOC employee. (Since July 1987, this position has been staffed by a Systems employee.) Included among Systems' staff are doctors, nurses, a dentist, psychiatrist and psychologist, a pharmacist, technicians, and clerical staff. Since July 1986, the contracts have provided that Systems is to be compensated on the basis of the number of inmates at Shawnee. Quarterly performance level adjustments may be made, as determined by DOC and Systems and approved by the warden, if there are any deficiencies in the agreed-upon staffing level. All health equipment costing over $100 is owned by the State.

Systems' staff is required to represent DOC with local groups. Systems solicits, interviews, and hires the nurses. DOC has the right to approve the "initial and continued employment" of nurses and sets the minimum qualifications for them, e.g., Illinois license, one-year experience, CPR certification with correctional nursing experience preferred. The contract also states certain details that the interviewer should focus on when questioning job applicants. Prior to starting work, each person hired by Systems must pass a DOC background check (for security purposes). The final hiring selection is subject to DOC's approval. (The Board found that DOC did not exercise this right but rather limited its involvement to overseeing security and professional licensing matters.)

The contract also gives DOC complete discretion to remove a nurse from Shawnee, although only Systems can terminate a staff member. If Systems does not remove the nurse from Shawnee at DOC's request, DOC can lock her out. In one case, Systems terminated a nurse after DOC conducted an investigation which resulted in the assistant warden requesting her termination. Nurses' personnel files must be kept at Shawnee; Systems keeps duplicate files in its St. Louis office.

DOC sets the minimum staffing and scheduling requirements, and specifies how many hours a week a nurse may work, approves all hours that have been worked, and the length of the meal period. DOC provides the meals on site (for security reasons). Requests for all absences and overtime must be processed according to DOC requirements and procedures. DOC requires that all nurses must be evaluated annually in accordance with applicable State rules. Although, in

fact, Systems conducts the evaluations, DOC must verify them. DOC must approve all hours worked, which must be kept on DOC time-keeping forms. DOC requires all nurses to wear white uniforms and its identification badges which identify them as contractual employees. New nurses must attend 40 hours of orientation given by DOC at the State of Illinois Training Academy in Springfield. Further, each year DOC requires all nurses to complete 40 hours of in-service training.

The contract states that nurses must comply with Administrative Regulations and Administrative Directives, as well as policies and procedures of DOC and Shawnee. The directives for the health care unit were written by the DOC Medical Director and approved by the Director of Corrections. From these directives, each institution develops its own institutional directives; at Shawnee, these were mostly written by a DOC employee and approved by the warden. Pursuant to these directives, the contract provides for a "Health Care Services Review Committee," which is made up of both DOC and Systems administrators. Its function is to review inmate complaints, infirmary care, mental health responses, health records, etc. Meeting minutes are given to the warden. The Shawnee nurses manual "is the how-to guide for organizing, planning and administering" health care, and incorporates applicable directives in addition to other details as to how the work is to be performed. The manual was written by a Systems employee, but after DOC's approval, became the property of DOC.

Nurses are hired as Systems employees. Systems determines their pay rate and issues the checks from St. Louis. It provides all benefits, *e.g.*, health insurance, retirement plan. Vacation time, sick leave, etc., are established by Systems. Only Systems can transfer, promote, discipline, and terminate a nurse. Systems pays unemployment and workers' compensation insurance premiums and all required employee taxes. However, the contract provides that Systems has a right to "seek representation and indemnification from the Attorney General's Office."

■ The findings of facts by the hearing officer and the Board were similar for the most part, although the hearing officer's findings were considerably more comprehensive. However, the differences between the two opinions lie in the application of law to these facts. The question of subject matter jurisdiction is not a factual question but a legal issue. (*Schalz v. McHenry County Sheriff's Department* (1986), 113 Ill. 2d 198.) Jurisdiction of an administrative agency is determined by provisions of the statute creating the agency and conferring powers on it. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill.

2d 540.) After examining the relevant statutes and applying the law to the facts of this case, we conclude that Systems is an agent of DOC.

The standard used by the Board to determine employer status was established in *Du Page County Board*, 1 Pub. Employee Rep. (Ill.) par. 2003, Nos. S—RC—9, S—RC—17 (ISLRB April 26, 1985). In cases involving several potential employers, the crucial inquiry is the extent to which the entity is necessary to create an effective bargaining agent (degree of control test). The Board determined that DOC exerted little control over the nurses and thus was not a necessary party to any bargaining agreement. As a result, the Board concluded that the nurses could not be State employees.

However, we believe the initial task is to define the employer before applying the degree of control test. The Act defines a public employer as, among other things, any person with authority to *act on behalf of the State or its departments*. (Ill. Rev. Stat. 1985, ch. 48, par. 1603(o).) And, "person" includes corporations. (Ill. Rev. Stat. 1985, ch. 48, par. 1603(1).) The Unified Code of Corrections sets forth DOC's duties. (Ill. Rev. Stat. 1985, ch. 38, par. 1001—1—1 *et seq.*) DOC is required to provide medical and dental care to the inmates. (Ill. Rev. Stat. 1985, ch. 38, par. 1003—7—2(d).) Moreover, the chief administrative officer *shall* administer DOC programs for the custody and *treatment* of inmates. (Ill. Rev. Stat. 1985, ch. 38, par. 1003—6—2(a).) DOC shall train its own personnel. (Ill. Rev. Stat. 1985, ch. 38, par. 1003—2—7.) The comments to the section which delineates DOC's duties note that DOC is given broad discretion in determining standards and procedures and rules for day-to-day operations. Ill. Ann. Stat., ch. 38, par. 1003—2—7, Council Commentary, at 136 (Smith-Hurd 1982).

Thus, it is apparent that a State has an affirmative duty to provide persons in its custody with a medical care system that meets minimum standards of adequacy. (See *Wellman v. Faulkner* (7th Cir. 1983), 715 F.2d 269.) It has further been held that a public body may not delegate a discretionary public responsibility with which it is charged. (*Peters v. Health & Hospitals Governing Comm'n* (1981), 88 Ill. 2d 316.) Our Federal district court in *Henderson v. Harris* (N.D. Ill. 1987), 672 F. Supp. 1054, considered the claims of a Stateville inmate who allegedly received substandard medical care while waiting in the Federal Metropolitan Correctional Center in Chicago to testify in a Federal case. The *Henderson* court rejected the argument of the United States that the court lacked jurisdiction to hear plaintiff's complaint against the United States because of the alleged negligence

of a private corporation which had contracted as an independent contractor with the government to provide health services at the jail. Relying on *Estelle v. Gamble* (1976), 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285, the *Henderson* court found that providing sufficient health care to inmates is a constitutional duty. The court stated, "[c]ontracting with private health services agencies will not relieve the federal government from its constitutional obligation. *The non-delegability of this duty applies to both state and federal governments.*" (Emphasis added.) *Henderson*, 672 F. Supp. at 1063.

■■ Without deciding the delegability issue, we must conclude that any corporation performing duties which are statutorily (and constitutionally) mandated as government duties must, at the very least, be acting on behalf of the State and is, thus, an agent of the State. Further, an agent may be an independent contractor. *Protective Insurance Co. v. Coleman* (1986), 144 Ill. App. 3d 682, 494 N.E.2d 1241.

■■ ■ Finally, in this case, both the hearing officer and Board used a "degree of control" test to determine the existence of the relationship between the State and Systems. The findings of both the hearing officer and Board as to the fact of control are supported by the manifest weight of the evidence and, thus, this court cannot reverse those findings. (*Wapella Education Association IEA-NEA v. Illinois Educational Labor Relations Board* (1988), 177 Ill. App. 3d 153, 531 N.E.2d 1371.) Although the facts do show control by Systems over the nurses at Shawnee, the right to control is by the agreement and law in the DOC, not Systems. The test of the agency is the existence of the right to control manner of accomplishing task by alleged agent as well as the agent's ability to subject principal to. personal liability. To put it in another light, the relationship of principal and agent exists if the principal has the right or duty to supervise and control and to terminate the relationship at any time even though the right is not exercised. *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, 317 N.E.2d 369.

Even though DOC permitted Systems to control the Shawnee nurses, the contract vested initial and continued employment of the Shawnee staff subject to the approval of DOC. The contract vested overall supervision in a medical director, and the director had to be approved by the agency's (DOC's) medical director's chief or his designee. Next, the contract provides for indemnification of Systems under the Illinois indemnification act (Ill. Rev. Stat. 1987, ch. 127, par. 1254). The term "employee" under that act includes individuals or organizations who contract with DOC for services. Ill. Rev. Stat. 1987, ch. 127, par. 1301.

Finally, Systems' contract is, by its terms, subject to termination if sufficient funds are not appropriated or otherwise made available to cover DOC's obligations.

■ Based on the above, we conclude that as a matter of law and fact Systems, despite its control over the Shawnee nurses, is in fact a true agent of DOC in the rendering of medical service at the Shawnee Correctional Center and that the Board's conclusion that it is neither agent nor co-employer is in error.

Accordingly, we reverse the Board's decision and remand the case to the agency for a determination of the substance of INA's complaint.

Reversed and remanded.

COCCIA, P.J., and LORENZ, J., concur.