COMMERCE BANK, Special Adm'r of the Estate of Louise Osborn, Deceased, Plaintiff-Appellee, v. YOUTH SERVICES OF MID-ILLINOIS, INC., Defendant-Appellant.

Fourth District   No. 4—01—0999

Argued June 18, 2002.—Opinion filed August 23, 2002.

151

MYERSCOUGH, J., dissenting.

Theodore W. Pannkoke, Esther Joy Schwartz (argued), and Donald E. Stellato, all of Stellato & Schwartz, Ltd., of Chicago, for appellant.

Jason A. Cannell (argued) and Douglas N. Koth, both of Koth & Cannell, P.C., of Bloomington, for appellee.

JUSTICE COOK delivered the opinion of the court:
Defendant, Youth Services of Mid-Illinois, Inc. (Youth Services), appeals from the October 22, 2001, order of the McLean County circuit court denying defendant's posttrial motions for judgment notwithstanding the verdict and for a new trial. We reverse the order denying the motion for judgment notwithstanding the verdict.

I. BACKGROUND
This case began on July 29, 1993, when three-year-old Louise Osborn died while enclosed in a bedroom closet in the home of her foster parents, Sarah and Matthew Augsburger. According to the record, defendant was a private, not-for-profit corporation which was hired by the Department of Children and Family Services (DCFS). Defendant had placed Louise and her older brother with the Augsburgers the previous year. DCFS contracts out foster children to private foster agencies such as defendant to provide the services that DCFS would normally provide. In the context of this case, it was defendant's responsibility to find foster parents, make sure that the foster parents and their home complied with DCFS' licensing requirements, and then monitor the foster children in accordance with DCFS regulations and Illinois law. Defendant provided services to the children, created plans, distributed state money to the foster parents, and monitored

the foster parents, all pursuant to DCFS regulations. In other words, defendant acted in DCFS' place. The only duties that DCFS reserves for itself in cases like this are the licensing of the foster parents and the initial removal of children from their home that places them into state custody. DCFS also handles court appearances. Plaintiff Commerce Bank, f/k/a the People's Bank, sued the Augsburgers and defendant over Louise's death on behalf of Louise's estate.

In a previous appeal from an order granting a motion to dismiss, this court ruled that the Augsburgers were immune from suit for any negligence in regard to their supervision of Louise because they were clothed with parental immunity. See *Commerce Bank v. Augsburger*, 288 Ill. App. 3d 510, 517, 680 N.E.2d 822, 827 (1997) (*Commerce Bank I*). Plaintiff consequently amended its complaint to sue only defendant for defendant's own negligence in Louise's death and the Augsburgers' negligence under the theory of *respondeat superior*. The trial court dismissed plaintiff's *respondeat superior* claims, but allowed the rest of the claims to go to trial. A jury ultimately found that defendant was not negligent in Louise's death.

Plaintiff appealed, arguing only that the trial court erred when it prevented plaintiff from suing defendant under a theory of *respondeat superior*. This court agreed with plaintiff, and reversed and remanded the question of whether an agency relationship existed between the parties that would give rise to the doctrine of *respondeat superior*. See *Commerce Bank v. Youth Services of Mid-Illinois, Inc.*, No 4—98—0833 (August 10, 1999) (unpublished order under Supreme Court Rule 23) (*Commerce Bank II*).

The case proceeded to trial against defendant on remand. A jury found that Sarah Augsburger was negligent in her supervision of Louise, proximately causing her death, and that an agency relationship existed between Sarah Augsburger and defendant, thus making defendant vicariously liable for Louise's death under the doctrine of *respondeat superior*. The jury awarded plaintiff a total of $640,000: $400,000 on a wrongful death claim and $240,000 on a survival claim. Defendant filed posttrial motions for judgment notwithstanding the verdict and for a new trial, which were denied. Defendant appeals.

## II. ANALYSIS

Defendant raises several arguments in support of its contention that the trial court should have granted either the motion for judgment notwithstanding the verdict or a new trial: (1) the evidence was insufficient to support the jury's finding that an agency relationship existed between defendant and Sarah Augsburger; (2) the evidence was insufficient to support the jury's finding that Sarah Augsburger

was negligent, proximately causing Louise's death; (3) defendant was entitled to derivative immunity based upon Sarah Augsburger's parental immunity; (4) the trial court imposed an impossible duty of constant supervision on Sarah Augsburger; (5) defendant was a public entity immune from suit under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—206 (West 2000)); (6) the trial court abused its discretion by refusing certain jury instructions; (7) the trial court abused its discretion by allowing evidence of abuse and neglect within the Augsburger home; and (8) the evidence was insufficient to support the jury's award of $640,000 when there was no evidence of pecuniary loss or that Louise suffered conscious pain and suffering. We find that the trial court erred in denying defendant's motion for judgment notwithstanding the verdict because the evidence was insufficient to support the jury's finding of an agency relationship. We therefore need not address the other issues.

■■ The primary issue in this case was whether Sarah Augsburger was defendant's agent or merely an independent contractor. If an agency relationship existed, then defendant can be held liable for Sarah Augsburger's negligence under the doctrine of *respondeat superior*; defendant is not liable if Sarah Augsburger was an independent contractor. *Lang v. Silva*, 306 Ill. App. 3d 960, 972, 715 N.E.2d 708, 716 (1999). An independent contractor is hired to achieve a certain result but is not controlled in the method of reaching that result. *Lang*, 306 Ill. App. 3d at 972, 715 N.E.2d at 716. An agency relationship exists when the principal has the right to control the manner in which the agent performs his work. *Lang*, 306 Ill. App. 3d at 972, 715 N.E.2d at 716. In determining whether an agency relationship exists, the following factors should be considered: the right to control the manner in which the work is performed, the right to discharge, the method of payment, whether taxes are deducted from the payment, the level of skill required to do the work, and the furnishing of the necessary tools, materials, and equipment. *Lang*, 306 Ill. App. 3d at 972, 715 N.E.2d at 716. The right to control the manner of doing the work is the predominant factor. *Wabash Independent Oil Co. v. King & Wills Insurance Agency*, 248 Ill. App. 3d 719, 723, 618 N.E.2d 1214, 1217 (1993). It does not matter if the right to control was not actually exercised. *Ross v. Cummins*, 7 Ill. 2d 595, 600, 131 N.E.2d 521, 524 (1956). The question of whether the parties' relationship is that of principal and agent or independent contractor is a question of fact unless the relationship is so clear that it is undisputable. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1065, 675 N.E.2d 217, 224-25 (1996).

■ Defendant argues that the trial court should have granted its motion for judgment notwithstanding the verdict because the evidence did not support the jury's finding that a principal-agent relationship existed between defendant and Sarah Augsburger. " 'Judgment notwithstanding the verdict should not be entered unless the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.' [Citation.]" *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999). If reasonable minds can come to different conclusions based on the facts presented, then judgment notwithstanding the verdict is not appropriate. *McClure*, 188 Ill. 2d at 132, 720 N.E.2d at 257. Our review of the trial court's decision on the motion for judgment notwithstanding the verdict is *de novo*. *McClure*, 188 Ill. 2d at 132, 720 N.E.2d at 257.

Our analysis begins with this court's mandate in the prior appeal in *Commerce Bank II*, wherein we remanded for the trial court to determine if an agency relationship existed between defendant and Sarah Augsburger:

"more precisely, whether defendant had enough control over the Augsburgers' day-to-day supervision of Louise and her brother necessary to create an employee-employer, or master-servant, relationship that would give rise to the doctrine of *respondeat superior*." *Commerce Bank II*, slip order at 7.

This court noted that the First District had found that DCFS-appointed foster parents were agents of the State (see *Griffin v. Fluellen*, 283 Ill. App. 3d 1078, 1087, 670 N.E.2d 845, 852 (1996); *Nichol v. Stass*, 297 Ill. App. 3d 557, 564, 697 N.E.2d 758, 762-63 (1998)), but we opined as follows:

"Perhaps given the relentless, around-the-clock care parenting foster children requires, defendant would not have had the control necessary for the imposition of vicarious liability for the Augsburgers' negligence." *Commerce Bank II*, slip order at 7-8.

Subsequent to our rulings in *Commerce Bank I* and *Commerce Bank II*, the Illinois Supreme Court reversed the First District in *Nichol* and abrogated *Griffin*, which were the cases we cited for the proposition that it was possible for a foster parent to be an agent of DCFS. In *Nichol*, foster parents were being sued for negligence because a foster child drowned in a toilet while in their care. The foster parents argued that they were agents of the state and therefore cloaked with sovereign immunity, because "they were subject to a diverse and comprehensive set of requirements concerning their care for [the] foster children," such as providing closet space, adequate bedding, and regulating meals and discipline. *Nichol v. Stass*, 192 Ill. 2d 233, 239,

735 N.E.2d 582, 587 (2000). The Illinois Supreme Court held that "[w]e do not believe that the preceding measures are anything more than licensing requirements or that they serve to establish the defendants' role as state employees or agents." *Nichol*, 192 Ill. 2d at 239, 735 N.E.2d at 587. Therefore, pursuant to this court's mandate and the holding in *Nichol*, the controlling issue in this case is whether the evidence presented supports a finding that defendant had control over the Augsburgers' day-to-day supervision of Louise beyond subjecting the Augsburgers to DCFS "licensing requirements."

There was testimony and evidence that defendant did in fact have the right to control a great deal of the day-to-day supervision and parenting of the foster children placed within the Augsburgers' home. Defendant could arrive at the Augsburgers' home any time, could instruct them when and how often to feed the children, to clean up the house, to change the children's bed linen, where the children could sleep, and how much allowance the children get, could direct supervision of the children, and could prohibit corporal punishment, among other things. If the Augsburgers failed to comply with defendant's instructions in any respect, defendant could remove the children from the home. The right to control the manner of doing the work and the right to discharge are critical factors in determining an agency relationship. *Lang*, 306 Ill. App. 3d at 972, 715 N.E.2d at 716.

However, in every area where defendant could exercise control over the Augsburgers, defendant was merely monitoring "licensing standards" set by DCFS regulations. See 89 Ill. Adm. Code § 402.10(a) (1993) (the number of meals and time span between meals); 89 Ill. Adm. Code § 402.10(f) (1993) (the manner in which meals are served and sanitary conditions); 89 Ill. Adm. Code § 402.9(g) (1993) (linen changes); 89 Ill. Adm. Code §§ 402.9(a), (b), (c) (1993) (sleeping arrangements); 89 Ill. Adm. Code § 402.21(i) (1993) (withholding child's spending money for disciplinary purposes); 89 Ill. Adm. Code § 402.16(b) (1993) (supervision of the child); 89 Ill. Adm. Code § 402.21(c) (1993) (corporal punishment). There was also uncontradicted testimony that every interaction defendant had with the Augsburgers was dictated by DCFS regulations. If DCFS had been monitoring the Augsburgers in this case, the Augsburgers would not have been agents of DCFS despite the amount of control the regulations gave DCFS over the Augsburgers' day-to-day parenting. See *Nichol*, 192 Ill. 2d at 240, 735 N.E.2d at 587.

■ By merely acting in accordance with DCFS regulations, defendant did not have the right to exercise any more control over the Augsburgers than DCFS would have had if it were providing services directly. The defendant in this case was essentially acting in DCFS'

place. Pursuant to the Illinois Supreme Court's decision in *Nichol*, if there is no proof that defendant was exercising control over the Augsburgers beyond merely subjecting them to DCFS regulations, then an agency relationship has not been proved in this case. *Nichol*, 192 Ill. 2d at 240, 735 N.E.2d at 587. Therefore, since there was no evidence that defendant exercised day-to-day control over the Augsburgers' parenting beyond merely subjecting them to DCFS regulations, the jury's finding of an agency relationship cannot stand.

## III. CONCLUSION

We reverse the October 22, 2001, order of the McLean County circuit court denying defendant's posttrial motion for judgment notwithstanding the verdict.

Reversed.

TURNER, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. I would affirm the trial court. The majority correctly identifies the issue as whether defendant exerted control beyond DCFS licensing regulations over the Augsburgers' day-to-day supervision of Louise. In response to this question, the majority stated defendant did have the right to control "a great deal of the day-to-day supervision and parenting" provided by the Augsburgers. 333 Ill. App. 3d at 155. However, the majority finds no agency relationship between defendant and the Augsburgers, stating:

> "By merely acting in accordance with DCFS regulations, defendant did not have the right to exercise any more control over the Augsburgers than DCFS would have had if it were providing services directly." 333 Ill. App. 3d at 155.

Finding "no evidence" that defendant's control went beyond "merely subjecting" the Augsburgers to DCFS regulations, the majority finds no agency relationship. 333 Ill. App. 3d at 155. I disagree.

Through the testimony of Jim Smith (Smith), executive director of Youth Services, and William Sherman (Sherman), foster family supervisor for the Augsburgers, evidence was presented that defendant exercised control over the Augsburgers beyond merely subjecting them to DCFS regulations. Plaintiff's appellee brief summarizes Smith's testimony as follows:

> "A treatment plan was drafted by Youth Services, *not DCFS* or the foster parents, and the foster parents were required to follow it. Youth Services was in the home 2-4 times a week. Youth Services would visit the home to make sure [the] foster parents were doing

what they were supposed to do[,] which even included maintaining a tidy house. Failure to comply with a Youth Services' directive could result in discharge of the foster parents. Youth Services had the right to discharge Sarah Augsburger." (Emphasis added.)

Sherman's testimony further explained the extent of defendant's control over the Augsburgers, and plaintiff's appellee brief summarized it as follows:

"Bill Sherman was the foster family supervisor for Sarah and Matthew Augsburger. As foster family supervisor[,] one thing Bill Sherman was required to do was make sure that the home complied with all foster care licensing requirements. If a licensing violation occurred, Sherman could take corrective action ranging from talking to the parents to discharging them. Sherman was constantly monitoring the care the Augsburgers gave Louise even for simple things[,] including[ ] a comfortable bed, three balanced meals per day—eaten at appropriate times and not in a hurried manner. Sherman even admitted that he would monitor the Augsburgers to ensure they were providing appropriate supervision to Louise.

*Separate from licensing guidelines*, Youth Services drafted a treatment plan in which Youth Services required the Augsburgers to provide Sean and Louise 'clean and safe living conditions,' 'adequate nutrition,' and 'adequate clothing.' Youth Services could have discharged the Augsburgers had the goals identified in the treatment plans not been achieved to the satisfaction of Youth Services. It was his job to make sure the treatment plan was followed. The treatment plan which was drafted by Youth Services was a tool used in raising Louise and Sean. *** Sarah was present at 'staffings.' Youth Services had an absolute right to discharge the Augsburgers at any time and for any reason. Bill Sherman filled out [p]rogress [n]otes wherein he repeatedly memorialized a decision to maintain placement." (Emphasis added.)

The clearest example of the reach of defendant's control over the Augsburgers, however, was defendant's illegal policy on reporting allegations of abuse and neglect. Plaintiff's appellee brief states:

"Youth Services had a policy (an illegal policy) regarding reporting allegations of abuse and neglect to DCFS. The policy was that in cases where the child reported the abuse or the abuse was obvious[,] Youth Services called it into the Hotline, but on cases that were in question, Youth Services investigated it and then wrote a note to Jim Smith[,] who would decide whether DCFS should be called. This policy was followed in relation to the Augsburgers when an anonymous call was received about some concerns in the home. Bill Sherman, along with Barbara Schneider, investigated the concerns and prepared investigation notes regarding their

investigation of Sarah. On a separate occasion, Bill Sherman[,] along with Ron Webber (no relation to Dawn)[,] met with Jackie Blaine and fielded her concerns regarding the placement."

Clearly, the majority's finding that "every interaction defendant had with the Augsburgers was dictated by DCFS regulations" is erroneous. 333 Ill. App. 3d at 155. Sufficient evidence supported the jury's finding of an agency relationship. The jury's finding of an agency relationship should, therefore, be affirmed.