*In re* MARRIAGE OF MARY LOUISE HILLEBRAND, n/k/a Mary Louise English, Petitioner-Appellant, and QUINTON HILLEBRAND, Respondent-Appellee.

Fifth District    No. 5—93—0105

Opinion filed March 10, 1994.

Richard Kruger, of Kruger & Henry, of Metropolis, for appellant.

Mark C. Hunter, of Metropolis, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Mary Louise and Quinton Hillebrand were divorced on September 29, 1986. Mary Louise was awarded sole custody of the parties' minor child, Teresa Marie. Quinton was ordered to pay child support, which he did until April of 1992, when Teresa became 18. On November 4, 1992, Mary Louise filed a petition for educational expenses and maintenance as provided under section 513 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/513 (West 1992)). The circuit court ordered Quinton to pay $200 per month for the educational and

maintenance expenses of Teresa Marie. Quinton was also ordered to maintain the child on his medical and dental insurance and to pay all deductibles. The court further ordered Mary Louise and Quinton to each pay one-half of any medical and dental expenses for the minor not covered by insurance. Each party was ordered to pay his or her own attorney fees. Mary Louise appeals. We affirm in part and reverse and remand in part.

At the hearing on the petition for educational and maintenance expenses, Mary Louise testified that she is 42 years of age and was last employed as a sales clerk on February 6, 1990. Mary Louise testified that she is totally disabled and receives monthly social security benefits of $257. She has a worker's compensation claim pending for which she hopes to receive $20,000. She testified that she has no other insurance and is unable to work due to spinal injuries and stomach problems.

Mary Louise testified that her daughter, Teresa Marie, is 19 years old and is a freshman at Paducah Community College, where she intends to pursue a nursing degree. Teresa lives with Mary Louise and Mary Louise's husband in Paducah, Kentucky. Mary Louise testified that Teresa's monthly schooling expense, exclusive of housing, utilities, and food, is $569.96, which is broken down as follows:

| | |
|---|---|
| School tuition at $350 per semester | $ 87.50/mo. |
| Text books at $200 per semester | $ 50.00/mo. |
| Miscellaneous school supplies/expenses | $ 25.00/mo. |
| Car payment-transportation to and from school | $134.70/mo. |
| Car insurance | $117.00/mo. |
| Gasoline and repairs | $ 50.00/mo. |
| Car license | $ 5.76 |
| Clothing | $100.00/mo. |
| Total Monthly Expenses | $569.96. |

Mary Louise testified that there are 12 more monthly car payments left on Teresa's car. She testified that Quinton Hillebrand has not contributed toward any of Teresa's school expenses. Mary Louise and her husband, Don English, paid for Teresa's schooling her first semester at Paducah Community College. Mary Louise further testified that Teresa's share of housing, utility, and food expenses per month is $361. She calculated this figure by dividing the household expenses by one-third. Petitioner submitted an exhibit to explain her testimony:

Teresa's share of housing, utilities, and food per month:

| | | |
|---|---|---|
| (1) Food | | $135.00 |
| (2) Utilities | | |
| (a) Water | 8.59 | |
| (b) Natural Gas | 34.97 | |
| (c) Electric | 22.02 | |
| (d) Cable TV | 12.00 | |
| (e) Telephone | 15.00 | |
| (f) Total Utilities | | 92.58 |
| (3) Housing (1/3 of Mortgage) | | 91.75 |
| (4) House Insurance | | 25.00 |
| (5) Real Estate Taxes | | 16.67 |
| Total | | 361.00. |

Mary Louise and her husband owe approximately $38,000 on their $48,000 home. They are currently making payments on three automobiles. She was unable to estimate how much is currently owed on their 1989 Lincoln automobile; however, Mary Louise testified that $1,800 is owed on the 1988 Oldsmobile, and $1,800 is owed on the 1987 Ford Escort.

Teresa testified that she was born on November 10, 1973, and is 19 years of age. She is a full-time student at Paducah Community College and is pursuing an associate degree as a registered nurse. Teresa anticipates graduating from college in four or five years. At the time of the hearing Teresa had just completed orientation as a nursing assistant at the Parkview Convalescent Home. She will work approximately 15 to 25 hours per week and earn $4.35 an hour. Teresa testified that her father told her during the summer of 1992 that he would pay for one-half of her schooling expenses, but to date he has paid nothing. Teresa also testified that at her own behest she had her name changed to Teresa English at the close of her senior year in high school.

Quinton Hillebrand has been employed as a full-time electrician at Allied Signal for 26 years. He testified that his gross wage is $648 per week, and his net pay is $435 per week. In 1990 his gross income was $32,542. In 1991, his gross income was $34,300. Quinton testified that Teresa is listed as a dependent on his medical and dental insurance, and he has always paid the deductibles. In 1992, Teresa incurred approximately $800 in medical and dental expenses. Quinton testified that the insurance company paid one-half of that amount, and he paid the balance. Quinton testified that Mary Louise has never paid anything toward the medical and dental expenses.

Quinton testified that he has always been willing to pay the total cost of Teresa's tuition, textbooks, and school expenses, but he has never received a bill for said expenses. Quinton testified that he was shocked to learn that Teresa had her name changed, but he has never withdrawn his offer to pay her college expenses.

Quinton owns a 17-acre farm, valued at $60,000. He testified that he owes approximately $17,000 on the farm. Quinton also has a loan on his 1993 van. His checking account has $300 in it, and he recently loaned his son $3,000 for a down payment on a house. Quinton and Mary Louise's son, Michael, is 24 years old and is divorced. He works for a barge line. Quinton testified that he helps his son with expenses because Michael has been unable to make ends meet since his wife left him and their three-year-old son. Michael and his son eat dinner at Quinton's home practically every evening.

Mary Louise's husband, Don English, testified that he and Mary Louise have claimed Teresa as a dependent on their last two income tax returns. Their house payment is $275 per month. They also make a $158 monthly payment on the $5,000 home-improvement loan they have. Don testified that in 1991 he was employed as a deputy sheriff to transport prisoners for the McCracken County sheriff's department. Mary Louise wore a deputy's uniform and gun and rode with Don when he transported prisoners. She received no pay for this, although she worked in this capacity for six to eight months.

■ Under section 513 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/513 (West 1992)), the court is authorized to require either parent or both parents to contribute to the educational expenses and maintenance of children who have attained majority. During the pendency of the proceedings in the trial court, this statute was amended, effective January 1, 1993. The statute as it currently reads provides:

> "Support for Non-minor Children and Educational Expenses. (a) The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the support of the child or children of the parties who have attained majority in the following instances:
>
> (1) When the child is mentally or physically disabled and not otherwise emancipated, an application for support may be made before or after the child has attained majority.
>
> (2) The court may also make provision for the educational expenses of the child or children of the parties, whether of minor or majority age, and an application for educational expenses may be made before or after the child has attained majority, or after the death of either parent. The authority

under this Section to make provision for educational expenses extends not only to periods of college education or professional or other training after graduation from high school, but also to any period during which the child of the parties is still attending high school, even though he or she attained the age of 18. The educational expenses may include, but shall not be limited to, room, board, dues, tuition, transportation, books, fees, registration and application costs, medical expenses including medical insurance, dental expenses, and living expenses during the school year and periods of recess, which sums may be ordered payable to the child, to either parent, or to the educational institution, directly or through a special account or trust created for that purpose, as the court sees fit.

(b) In making awards under paragraph (1) or (2) of subsection (a), the court shall consider all relevant factors that appear reasonable and necessary, including:

(1) The financial resources of both parents.

(2) The standard of living the child would have enjoyed had the marriage not been dissolved.

(3) The financial resources of the child." (750 ILCS 5/513 (West 1992).)

Mary Louise argues that in determining an appropriate amount to be awarded for educational and maintenance expenses, the trial court should have utilized the child support guidelines of section 505 of the Act (750 ILCS 5/505 (West 1992)). Mary Louise cites no statutory authority or case law in support of this theory. We note that when the legislature amended section 513, effective January 1, 1993, it did not adopt the guidelines of section 505 but rather continued to require courts to consider the relevant factors as were previously used in the statute. Therefore, we cannot find that the trial court erred in not considering the child support guidelines of section 505 in making its determination.

Mary Louise further argues that the court's award of $200 per month is inadequate. The trial court had the discretion, based on the law and the evidence presented, to determine the issue of Quinton's responsibility to contribute to Teresa's educational expenses.

" 'In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court but rather did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed the bounds of reason and ignore recognized principles of law so that substantial injustice resulted.' " (*In re Marriage of Stribling* (1981), 96 Ill.

App. 3d 317, 320, 421 N.E.2d 403, 405, quoting *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.)

Our review of the record leads us to conclude that the trial court did not abuse its discretion and that its determination is not contrary to the manifest weight of the evidence.

■ When the court determines parental responsibility for educational expenses, it should consider the financial resources of both parents and the child, the standard of living of the child absent divorce, and the cost of education. (*In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 915, 601 N.E.2d 298, 304.) In its order requiring Quinton to pay $200 per month, the trial court noted how it calculated this figure:

| | |
|---|---|
| School tuition | $87.50 per month |
| School textbooks | $50.00 per month |
| Miscellaneous school expenses | $25.00 per month |
| Maintenance related to education | $37.50 per month. |

The trial court also ordered Quinton to maintain Teresa on his medical and dental insurance and to pay all deductibles. It is not mandatory that the trial court order that Teresa's expenses be shouldered by Quinton. The trial court ordered Quinton to pay for Teresa's entire cost of schooling, plus an additional amount as maintenance. Quinton was also ordered to pay for Teresa's medical and dental insurance including all deductibles.

While Mary Louise contends the appropriate award should have been $931 per month, much of that amount as calculated by Mary Louise includes her mortgage payment, homeowner's insurance, and other costs which she would have to pay whether Teresa lives at home or not. We cannot say that the trial court acted unreasonably in this case. We find the evidence sufficient to support the trial court's decision, and we believe the award was a proper exercise of the trial court's discretion.

Mary Louise next argues that the trial court erred in refusing to order Quinton to pay her attorney fees of $841.25. On this issue we reverse and remand.

An award of attorney fees in a dissolution proceeding rests in the sound discretion of the trial court, and a court of review will reverse only for an abuse of discretion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235.) The party seeking the attorney fees must show a financial inability to pay and must show the financial ability of the opposing spouse to pay. (*In re Marriage of Osborn* (1990), 206 Ill. App. 3d 588, 602, 564 N.E.2d 1325, 1333.) Financial inability does not mean destitution but means that the

payment would strip the petitioner of her means of support and undermine her financial stability. (*In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 832, 597 N.E.2d 847, 866.) In this case the parties stipulated to the reasonableness of Mary Louise's attorney fees. The dispute arises over the financial ability or inability of the parties to pay these fees.

■ Mary Louise is not employed and receives social security disability payments of $257 per month. Her assets are heavily encumbered. Quinton, on the other hand, has gross annual earnings in excess of $34,000. He has considerably more assets than does Mary Louise, and he is financially capable of paying her attorney fees. Because of Quinton's ability to absorb Mary Louise's attorney fees, and in view of the significant disparity in incomes between the parties, we find that the trial court abused its discretion in not ordering Quinton to pay the fees. We therefore order that Quinton pay Mary Louise's attorney fees of $841.25, under such terms and conditions as the trial court may direct.

For the reasons stated, we affirm the trial court's award of Teresa's educational and maintenance expenses. We reverse the court's decision denying Mary Louise's petition for attorney fees, and we order that Quinton pay her fees in the amount of $841.25, upon such terms and conditions as the trial court may direct.

Affirmed in part; reversed in part and remanded with directions.

LEWIS, P.J., and GOLDENHERSH, J., concur.