CRAIG OSBORNE, Plaintiff-Appellant, v. RICHARD CLAYDON *et al.*, Defendants-Appellees.

Fourth District    No. 4—94—0069

Argued August 17, 1994.—Opinion filed September 30, 1994.

James R. Epstein (argued) and David R. Nordwall, both of Epstein, Zaideman & Esrig, P.C., of Chicago, for appellant.

John L. Morel (argued), of John L. Morel, P.C., of Bloomington, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On January 6, 1992, plaintiff Craig Osborne brought suit in the circuit court of McLean County against defendants Dr. Richard Claydon, his wife Marilyn Claydon, and others seeking damages for injuries plaintiff suffered when he dove into a swimming pool on the Claydons' premises on June 12, 1990. After plaintiff filed an amended complaint, only count I of which was directed against the Claydons, the Claydons moved for summary judgment as to that count. On December 22, 1993, the court entered summary judgment as to that

count in favor of the Claydons in bar of action. The order found no just reason to delay enforcement or appeal. (134 Ill. 2d R. 304(a).) Plaintiff has appealed. We affirm.

The amended count I alleged that (1) at least from the summer of 1988, the Claydons had permitted their minor son Chris and plaintiff, also a minor, to use the swimming pool without supervision or safety rules particularly in regard to diving; (2) in particular, the boys had been permitted to run from a grass area beside the pool, across a cement deck and to dive in the shallow end of the pool; (3) as a result, the boys had repeatedly performed that conduct up to and including the time of plaintiff's injury, often in the Claydons' presence; (4) on the date of the injury, the Claydons left for a vacation but without arranging for adequate supervision of those who used the pool and did not prohibit use during their absence although they had reason to believe the pool would be used; and (5) at the time of plaintiff's injury, he sought to avoid another person using the pool who was floating on a raft and struck his head on the bottom.

Count I of the amended complaint summarized the Claydons' allegedly tortious conduct as (1) permitting the use of the pool and leaving it in an operable condition when no adequate supervision was present, and (2) permitting plaintiff and others to perform dangerous dives into the shallow end of the pool without warning them of the dangers. The Claydons' motion for summary judgment set forth certain facts which we will discuss and concluded that the sole issue before the court was whether "the Claydons had a duty to warn a [17]-year-old young man of the risks of diving headfirst into their in-ground swimming pool" in which he had previously swum and dived frequently.

A motion for summary judgment should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992); see also *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) In deciding whether to grant summary judgment, a court shall construe the pleadings, affidavits, depositions, admissions, and exhibits strictly against the movant and liberally in favor of the opponent. When this is done, and the record indicates all the evidence is before the court, and no judgment for the respondent to the motion could ever stand, the court should grant the motion for summary judgment. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26-27, 305 N.E.2d 535, 538; *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500.

■ The issue of whether one person or entity owes a duty to exercise care to prevent injury to another is a question of law to be decided by the court. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 396; see *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.) Where, as here, the duty of adult owners or occupiers of land to minors is involved, the adult owners or operators owe a special duty to protect minors from dangerous conditions of the premises which are likely to cause injury to minors who, because of their age and immaturity, would not be expected to comprehend and avoid the risks. (See *Cope v. Doe* (1984), 102 Ill. 2d 278, 286, 464 N.E.2d 1023, 1027.) We affirm here because we conclude that plaintiff was old enough and mature enough to appreciate the danger of the dive he was performing when injured.

The following facts are undisputed: (1) the Claydons had an in-ground swimming pool at their residence during times significant; (2) that pool was three feet deep at its shallow end, sloped only slightly for approximately 10 feet and then sloped downward to a depth of $8^1/2$ feet at the deep end; (3) plaintiff was 17 years and 3 months old on June 12, 1992, when he was severely injured in the spine while making a running dive into that pool; (4) he was there as a guest of the Claydons' 16-year-old son, Chris, who was a close friend; (5) two younger girls, Kim and Jamie, were also present after receiving permission from Chris to come and had been playing with a small inflated raft; and (6) plaintiff made a run from approximately 10 feet from the shallow end to the edge of the pool and dove out over the raft and into the pool whereupon his head hit the bottom of the pool resulting in severe injury to his spine.

Plaintiff testified in a discovery deposition that he had been a member of the Bloomington High School swim team the previous year and had made racing starts from a box whereby he was required to spring out as far as possible and to stay close to the surface of the water. Plaintiff testified that he was unaware of the danger from diving of receiving a spinal cord injury such as he suffered. Plaintiff's swimming coach testified by affidavit that while practicing with the swimming team, plaintiff made approximately 40 racing dives per day, but he had never explained to plaintiff or others the possible injuries which would result from diving into a pool and hitting the bottom with the head. Plaintiff also testified that since 1988, he had been a frequent user of the defendants' pool, had dived into the pool from the shallow end on many occasions, and often made a running dive from the position he ran from when he was injured.

Dr. Richard Claydon testified in a discovery deposition that he

was aware of the phenomenon we later discuss called "rudder-down effect" and that he had seen plaintiff dive from the shallow end of the pool from a standing position. Marilyn Claydon testified in a deposition that she was not aware of the "rudder-down effect" at the time of the injury to plaintiff but upon having it explained, she deemed it logical. She also denied having seen plaintiff dive from the shallow end of the pool, either from a standing or running start. However, plaintiff testified that Marilyn Claydon had been present when he made a running dive. As the Claydons were the movants, seeking the summary judgment, we must assume plaintiff's testimony was correct in passing upon the propriety of the summary judgment.

In *Cope*, the supreme court affirmed an appellate court decision (*Cope v. Doe* (1983), 113 Ill. App. 3d 1167, 457 N.E.2d 171 (unpublished order under Supreme Court Rule 23)) reversing a circuit court judgment of a verdict for a plaintiff as administrator suing for the death of a seven-year-old boy who had drowned in a pond at defendant's apartment complex. The pond was partially covered with ice, but contained a large portion of visible, open water. The supreme court concluded the situation presented obvious danger even to a seven-year-old boy. (*Cope*, 102 Ill. 2d at 289, 464 N.E.2d at 1028.) Similar determinations of lack of duty to minors, because of the obvious nature of the hazard involved, have been made in regard to landowners in *Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, 550 N.E.2d 665 (minors drowning in a man-made duck pond), *Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62, 509 N.E.2d 692 (minor killed by rushing floodwater), and *Weber v. Village of Carol Stream* (1984), 129 Ill. App. 3d 628, 472 N.E.2d 1203 (minor drowning in partially ice-covered pond).

Plaintiff's counsel explained at oral argument that had plaintiff made a dive from a place which was dangerous because of its height, the danger would have been readily apparent to plaintiff, and the Claydons would have owed no duty to plaintiff to protect him from such conduct. However, plaintiff maintains that because the dive made here by him was a "surface" type of dive, Illinois precedent establishes that the dangers of such a dive would not ordinarily be apparent to minors, and we should not hold here that the dangers of plaintiff's dive was readily apparent. In chronological order, those cases are *Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580, 464 N.E.2d 644 (*Leonard I*), and *Schellenberg v. Winnetka Park District* (1992), 231 Ill. App. 3d 46, 596 N.E.2d 93.

In *Leonard I*, a boy who was 15 years old at time of injury brought suit against the owner and operator of a beach to recover for that injury which made him a quadriplegic. Negligence was charged. The

evidence indicated that plaintiff was a customer at the beach and had been there several times in prior years. Apparently, after stopping at the water's edge, he "began a loping trot in the water," and when he got to where the gradually sloping beach was approximately $2^1/_2$ feet deep, he "performed a horizontal dive into the water," whereupon "[h]is hands hit the bottom of the lake followed by his head with sufficient force to jam his chin into his chest." (*Leonard*, 124 Ill. App. 3d at 582, 464 N.E.2d at 646.) Lifeguards were present and had been permitting the type of dive which that plaintiff performed.

In *Leonard I*, the jury returned a verdict for that defendant, but on appeal the appellate court for the third district reversed the judgment on that verdict and awarded a new trial because of the trial court's refusal to permit certain testimony of an expert. The expert was permitted to explain studies he had conducted concerning the mechanics of diving. The expert was also permitted to state that approximately 800 spinal injuries result from diving in the United States each year and, because the force required to break the neck is not great, most such injuries result in quadriplegia, half of which injuries occur to persons in the 15- to 25-year age group with taller people being more vulnerable than shorter people.

In *Leonard I*, the circuit court did not permit the expert witness to state an opinion as to whether "it was an unsafe practice for defendant to permit youngsters such as plaintiff to make a running head-first entry into the *wading area*." (Emphasis added.) (*Leonard*, 124 Ill. App. 3d at 585, 464 N.E.2d at 648.) Objections to other similar questions were also sustained.

The *Leonard I* court explained that neither the abandoned ultimate issue rule (see *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809) nor any theory excluding expert evidence concerning matters of common knowledge justified refusal of the expert's testimony. The court noted that "[n]either the manager nor the owner of the beach operation realized the potential danger, particularly for young men of plaintiff's sex and age," of the dive which the plaintiff undertook. (*Leonard*, 124 Ill. App. 3d at 586, 464 N.E.2d at 649.) The court further noted that the expert evidence would, in any event, have aided the trier of fact. The court also found further prejudicial error occurred at closing argument when defense counsel read from a book not introduced into evidence.

In *Schellenberg*, as in *Leonard I*, a 15-year-old boy was rendered a quadriplegic when, while in a standing position in water, he dove and hit his head. A suit seeking damages for negligence was brought by

the minor against the park district which owned and operated the beach where the injury occurred. There, as in *Leonard I*, expert testimony was presented and then admitted. The testimony explained that the type of diving involved presented a danger which was not readily apparent to the public because little force is necessary to create a spinal injury. The persons in charge of the beach testified that they had no signs up indicating the beach prohibited diving because no place existed there to dive. They did not consider the type of diving involved there dangerous. The circuit court granted that defendant a summary judgment, apparently based upon the theory that the danger to that plaintiff in making the dive involved was obvious to him.

Relying on *Leonard I* and the appeal after retrial in that case in *Leonard v. Pitstick Dairy Lake & Park, Inc.* (1990), 202 Ill. App. 3d 817, 560 N.E.2d 467 (*Leonard II*), the *Schellenberg* court reversed. In *Leonard II*, the case was an appeal after another judgment on a verdict for the defendant, and the court reversed again and remanded for a new trial because of a confusing instruction as to comparative fault by the plaintiff. The *Schellenberg* opinion contained a discussion of the special duty of owners and operators of land to minors on the premises and the vulnerability of teenage boys to the type of dive being made. The court then concluded that under the evidence, the issue of whether that defendant had a duty to warn the minor plaintiff was a question of fact for the trier of fact and remanded to the circuit court for further proceedings.

We note that the *Schellenberg* court's conclusion that the issue of duty to warn was a question of fact seems to be at odds with the precedent of *Kirk*, *Lance*, and many other cases of recent years which hold that the determination of the existence of duty is a question of law. We recognize the complicated nature of analysis of concepts of duty. We do not fault drawing analogy to *Schellenberg* on this basis. Rather, we point out that the dive being made in *Schellenberg* and the *Leonard I* and *Leonard II* cases where the diver was in the water when the dive started, and the dive taken here where the plaintiff ran for 10 yards on the ground, then dove from the edge of the pool out over a raft and into the shallow end of a pool with a hard bottom is like comparing grapes and grapefruit.

As the *Leonard I* and *Leonard II* and *Schellenberg* opinions pointed out, few people recognized the danger of a dive being made by a person already in the water. No evidence has been presented that people would not recognize the danger of the dive in the instant case. The plaintiff's brief, and his argument here, made much of the significance of the "rudder-down effect" in a dive. No evidence in this

record explains this phenomenon. Rather, plaintiff refers to the testimony of the experts in the *Leonard I* and *Leonard II* and *Schellenberg* opinions. That testimony merely refers to (1) the fact that slight force to the head can inflict great spinal damage; (2) the phenomenon that the longer the diver's body, the greater the velocity of the head may be in a horizontal dive; and (3) the theory that fast growing boys may not be adjusted to these changes in their body mechanics. Nothing in the expert testimony in those cases indicates a theory that some sort of "rudder-down effect" causes a horizontal diver's body to be directed to the bottom of the water sooner than expected.

Pursuant to plaintiff's motion, made while this case was under advisement, we have permitted plaintiff to cite the recent decision of the Appellate Court for the First District in *Bucheleres v. Chicago Park District* (1st Dist. August 17, 1994), No. 1—92—1106. There, a plaintiff who had been severely injured diving from a concrete seawall into Lake Michigan sued the defendant, contending it was negligent in not posting warning signs indicating the danger. The evidence indicated the defendant had control of the seawall and the surrounding beach area and knew people had been diving there and were injured. The appellate court reversed a summary judgment for the defendant.

The *Bucheleres* court reasoned that under the precedent of *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 146, 554 N.E.2d 223, 229, an occupier of land has a duty to protect invitees from a condition of that land that is dangerous if the occupier should expect that the invitee will not realize the condition of the land or will fail to protect himself or herself even though the danger is obvious. We note, however, that in *Ward*, the court mentioned with approval the observation in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 469, 343 N.E.2d 465, 472, that a defendant occupier of land would have no reason to expect that "an experienced electrical worker would fail to appreciate and avoid the danger posed by electrical wires." *Ward*, 136 Ill. 2d at 155-56, 554 N.E.2d at 234.

■ Here, though defendants may have known of some running diving taking place, they had no reason to believe that a 17 year old with extensive swimming and diving experience would not appreciate the obvious danger of attempting a running dive into the shallow end of the pool when the diver would be required to go over people in the pool. We recognize that in *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 328, 383 N.E.2d 177, 181, the court describes the circumstance where an owner of occupied land has no duty to protect minors from a dangerous condition as a danger "which children *gen-*

*erally* would be expected to recognize and appreciate." (Emphasis added.) (See also *Cope*, 102 Ill. 2d at 286, 464 N.E.2d at 1027.) We do not interpret this language to indicate that the age of the minor injured does not bear on the duty of the owner or occupier of land to take steps to prevent injury. Clearly, a duty may arise to a five year old from a condition of the premises which would not impose a duty to a 17 year old.

Plaintiff's general experience as a swimmer further negates any duty upon the part of the Claydons in regard to the dive plaintiff chose to perform. We agree with the decision of the Appellate Court for the Second District in *Swearingen v. Korfist* (1989), 181 Ill. App. 3d 357, 362-63, 537 N.E.2d 365, 368, that the experience of a minor bears upon the duty of owners and occupiers of land to protect a minor who is on the premises from dangers thereon. We do not deem that either *Cope* or *Corcoran* holds to the contrary.

Because of our determination that the Claydons owed no duty to protect plaintiff from the dangers of the dive he performed, we need not consider the question of negligence on their part.

We affirm the summary judgment entered by the circuit court.

Affirmed.

COOK and LUND, JJ., concur.