ALBERT SWANIGAN, Indiv. and as Next Best Friend of Cortez Swanigan, a Minor, Plaintiff-Appellant, v. JOEANNIER SMITH, Defendant-Appellee.

Fourth District No. 4—96—0502

Opinion filed January 14, 1998.

COOK, J., specially concurring.

Robert J. McIntyre, of Bucklin & McIntyre, P.C., of Springfield, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

On September 8, 1993, Albert Swanigan, individually and as next best friend of his son Cortez Swanigan, filed a complaint of negligence against defendant Joeannier Smith in the circuit court of Champaign County. The complaint sought damages for injuries Cortez sustained while in foster care at the home of defendant, who was a licensed foster parent with the Illinois Department of Children and Family Services (DCFS). After a trial, the jury found for defendant. Plaintiffs appeal, contending the trial court erred by (1) failing to enter a directed verdict; (2) failing to grant plaintiffs' motion for a new trial; (3) refusing to admit certain opinion testimony; and (4) refusing to permit plaintiffs to display to the jury both Cortez's actual physical injuries as well as photographs of those injuries. Defendant raises an additional issue on appeal, arguing the circuit court lacked subject-matter jurisdiction over the matter. We affirm.

Plaintiffs alleged in the complaint Cortez was injured while a guest in defendant's home. Plaintiffs sought medical expenses and damages for those injuries. On November 3, 1993, defendant filed a motion to dismiss with prejudice, pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)). Defendant argued the circuit court lacked subject-matter jurisdiction over plaintiffs' complaint, because plaintiffs' claims were essentially against the State of Illinois. After a hearing and without comment, the trial court denied defendant's motion.

At trial, prior to testimony, defendant objected to the admission of a question and answer from deposition testimony to be read to the jury. Defendant objected to the following question and answer from the deposition of Marsha Biggers, a DCFS employee:

"Based on your trained experience, do you have an opinion if it would be reasonable for a child-care provider to leave an 18-month-old child in a room unattended where the child could reach her hot cooking grease?"

Defendant argued the question assumed facts not in evidence and it asked for a legal conclusion that was for the jury to decide. Plaintiffs argued Biggers possessed the training and experience, as an investigator of abuse and neglect cases, to know what a child-care provider should do. The trial court sustained defendant's objection, concluding the question asked an opinion as to the ultimate fact for the jury to decide and that fact was not beyond the ken of the average juror.

During trial, the deposition testimony of three witnesses was read to the jury and two witnesses testified. Defendant testified as to the events leading up to and following the incident. Plaintiff Albert Swanigan testified regarding the extent of Cortez's injuries and the

treatment Cortez received for those injuries. Testimony relevant to this appeal follows.

Defendant, 49 years old, had two adult children and four minor children, and had been a foster parent for 14 years. In that time she cared for over 200 children, approximately 75% of whom were between the ages of one and three. At the time of the incident, defendant was licensed to care for children between ages 0 and 12. Defendant attended both required and voluntary classes on the provision of foster care. She worked with children at the Urbana Park District for about 4¹/₂ years, and she provided day-care services for 15 years.

The accident at issue occurred in late afternoon on a Friday. Cortez, whom defendant believed was 18 months old, was placed with defendant on the Monday morning earlier that week. Cortez had been slow to explore his new surroundings. Defendant considered him to be a "where you put [him], that's where [he's] staying" type of child, as well as nice, easygoing, and quiet. He was able to walk. Defendant had not yet formed an opinion as to whether Cortez recognized dangers in the home.

On the Friday of the accident, defendant cared for seven children. Those children included her four children, ages 5 through 9, and three foster children, ages 18 months through 6 years. After defendant prepared a meal for the children, the children indicated they were still hungry. Defendant cooked pork chops in a skillet while the children played. Two of her children rode bicycles in the yard, while their older sister watched them. The six-year-old foster child played on the outside steps. The three-year-old foster child was sitting in a chair in the boys' bedroom. Cortez was in defendant's bedroom, adjacent to the kitchen, watching defendant's eight-year-old son play with an electronic toy.

When the pork chops were done, defendant poured the grease into a metal bowl. She placed the bowl on the counter next to the sink, nearer to the counter's edge than to the wall. The counter was waist-high. Defendant usually poured grease into the drain, but at that time she believed too much sediment was present. Instead, she left the grease in the bowl to cool so she could dispose of it in the waste can.

When it was time to eat, defendant looked from the window and noticed some of the children were not where they should be. She walked to the porch to call the children in. While returning to the kitchen, she stopped to talk with the three-year-old foster child. While talking with that child, defendant observed Cortez standing next to the sink. He reached for the bowl, and before defendant could stop him, spilled the grease onto himself.

Defendant acknowledged if she had placed the bowl at the rear of the counter Cortez could not have reached it while standing on the floor. Defendant stated she had no reason to suspect a child would enter the kitchen, because they were playing and she was the only person in the kitchen during the meal preparation. Defendant also stated in her years of child care, no child had entered the kitchen in those circumstances. Defendant testified from the time she went to call the children in until Cortez's accident was less than one minute. There was no gate or obstruction to prevent Cortez from entering the kitchen.

Following the witness testimony, plaintiffs sought the admission of 12 photographs of Cortez and his injuries in evidence. The photographs were taken on January 20, 1996, approximately two months before trial. Cortez's condition had not changed since that time. The trial court ruled either the photographs would be entered, or the child displayed to the jury, but not both. Plaintiffs elected to use the photographs.

Both parties moved for a directed verdict; the trial court denied both motions. The jury found for defendant. On May 28, 1996, the trial court denied plaintiffs' posttrial motion. Plaintiffs filed a timely notice of appeal.

## I. SUBJECT-MATTER JURISDICTION

Defendant contends the trial court erred when it denied her motion to dismiss plaintiffs' complaint. Defendant maintains the trial court lacked subject-matter jurisdiction over this suit because the suit was a tort action against the State of Illinois, over which the Court of Claims has exclusive jurisdiction.

■ ■ Our review of a ruling on a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure is *de novo. Kemp-Golden v. Department of Children & Family Services*, 281 Ill. App. 3d 869, 879, 667 N.E.2d 688, 695 (1996). According to the State Lawsuit Immunity Act, "Except as provided in *** 'AN ACT to create the Court of Claims ***', *** the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 1994). The Court of Claims Act (Act) established the Court of Claims and gave that court exclusive jurisdiction of certain matters, including the following:

"(d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, *** provided, that an award for damages in a case sounding in tort *** shall not exceed the sum of $100,000 to or for the benefit of any claimant." 705 ILCS 505/8(d) (West 1994).

■ Whether a cause of action is a claim against the state depends

on the issues involved and the relief sought, not on the formal identification of the parties. The mandate against making the state a party to a suit cannot be avoided by making an action against the state's servants or agents when the real claim is against the state itself. *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990). When a judgment for the plaintiff may operate to control the state's actions or subject the state to liability, the action brought against a state employee in his or her individual capacity will be deemed to be a claim against the state. *Currie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992). An action is against the state when the following occurs:

> " '(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) *** the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.' " *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247, quoting *Robb v. Sutton*, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (1986).

The proper inquiry regarding allegations of negligence against state employees is to examine the source of the duty the employee is alleged to have breached. *Currie*, 148 Ill. 2d at 159, 592 N.E.2d at 980. When negligence originates from the state employee's breach of a duty imposed solely by his employment with the state, governmental immunity applies and bars the action in trial court. However, when the state employee is alleged to have breached a duty originating independently of his employment, sovereign immunity does not apply, and a negligence claim may be pursued outside of the Court of Claims. *Currie*, 148 Ill. 2d at 159, 592 N.E.2d at 980. For the purposes of our analysis, we will presume defendant was a state employee whose actions could result in state liability.

Defendant cites the analysis in *Griffin v. Fluellen*, 283 Ill. App. 3d 1078, 670 N.E.2d 845 (1996), a first district decision, in support of her argument. Defendant, citing *Healy*, 133 Ill. 2d 295, 549 N.E.2d 1240, argues because the source of the duty is key to the determination of whether governmental immunity applies, "[t]he only relevant analysis is whether the relationship between [defendant] and Cortez would have had a source outside the employment status of [defendant]." We disagree, and respectfully decline to follow the first district's rationale in *Griffin*, because it conflicts with our rationale in *Kiersch v. Ogena*, 230 Ill. App. 3d 57, 595 N.E.2d 696 (1992), and the second district's rationale in *Madden v. Kuehn*, 56 Ill. App. 3d 997, 372 N.E.2d 1131 (1978).

In *Griffin*, the amended complaint alleged the foster parent had a duty to use reasonable care to maintain her premises in a reasonably safe condition for the individuals on her premises. A foster child in the defendant's care sustained injuries after a space heater ignited and set the house on fire. The mother alleged the foster parent breached her duty by, among other reasons, failing to furnish supervision for the children when she knew or reasonably should have known such supervision was necessary. *Griffin*, 283 Ill. App. 3d at 1081, 670 N.E.2d at 848. The mother argued sovereign immunity did not bar her claim because the duty the foster parent purportedly breached arose independently of her state employment as a foster parent. The first district, rejecting the plaintiff's argument, stated the following:

> "Any alleged failure of a heating system in the home or the use of a space heater arose out of defendant's duty as a foster parent appointed by DCFS and [the child's] status as a foster child. [The foster child] would never have sustained injuries in the fire at defendant's house if she had not been in defendant's legal custody and a resident there." *Griffin*, 283 Ill. App. 3d at 1087, 670 N.E.2d at 852.

Both *Kiersch* and *Madden* involved causes of action against state-employed physicians, and the courts were confronted with the issue of whether the Court of Claims had jurisdiction. *Kiersch*, 230 Ill. App. 3d at 57-58, 595 N.E.2d at 697 (a student of Illinois State University treated by a doctor at the university's health services); *Madden*, 56 Ill. App. 3d at 998-99, 372 N.E.2d at 1132 (an inmate treated by a physician at the correctional facility). The courts in those cases did not look to the reason why the patients were in the care of the respective physicians, but instead looked to the source of the duties that existed by virtue of the patients being in their care. *Kiersch*, 230 Ill. App. 3d at 60-63, 595 N.E.2d at 699-701; *Madden*, 56 Ill. App. 3d at 1000-01, 372 N.E.2d at 1133-34. The courts found the physicians owed a duty of care not solely by virtue of their state employment, but by virtue of the general duty all doctors owe to their patients. *Kiersch*, 230 Ill. App. 3d at 63, 595 N.E.2d at 701; *Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1134. In this case, we should not look to the reason why Cortez was in defendant's home, but to the source of the duties that existed because Cortez was in defendant's home. Defendant owed Cortez a duty of care not only by virtue of her state employment as his foster parent, but also as a homeowner with a minor in her home. See *Cope v. Doe*, 102 Ill. 2d 278, 286, 464 N.E.2d 1023, 1027 (1984); *Osborne v. Claydon*, 266 Ill. App. 3d 434, 436, 640 N.E.2d 684, 686 (1994). It was from the latter

source of defendant's duty of care that plaintiffs' complaint sought recovery.

Moreover, we note our holding is consistent with the supreme court's analysis and conclusion in *Healy*. In *Healy*, a student of Northern Illinois University (NIU) filed a negligence suit against four NIU employees for personal injuries she sustained in a gymnastics accident. The complaint alleged two athletic directors, a gymnastics coach, and a gymnastics team trainer negligently performed their job duties, resulting in plaintiff's accident. *Healy*, 133 Ill. 2d at 298-99, 549 N.E.2d at 1242. The plaintiff relied on *Madden* and argued certain tort actions against state agents and employees may be brought in the circuit courts. *Healy*, 133 Ill. 2d at 311, 549 N.E.2d at 1248. The court, refusing to extend *Madden* to this case, stated the following:

> "The relationship between the plaintiff and the defendants would not have had a source outside the employment status of the defendants. Whatever duty was owed by the defendants to the plaintiff existed because of the plaintiff's status as a student and her participation in university-sponsored activities." *Healy*, 133 Ill. 2d at 313, 549 N.E.2d at 1249.

Defendant relies on *Healy* and argues it contradicts plaintiffs' position because defendant owed the same duty to the children in her home that a private citizen would owe: "State-employed gymnastics coaches do not owe their student gymnasts any different duties than those owed by their private counterparts. \*\*\* [T]he supreme court still concluded that a negligence action could not be maintained against them in circuit court."

Defendant's argument indicates confusion over the court's holding. The reason for the court's holding is not because the state employees owed the same duties as private employees would have owed, but because there was no other source for the duty of defendants to supervise the plaintiff, but for their employment. Under defendant's argument, coaches privately employed would have no duty to supervise or provide care for gymnasts. We do not believe *Healy* stated such. Because the coaches were employed by the state, the action may have bound the state and thus the action was limited to the Court of Claims. See *Currie*, 148 Ill. 2d at 166, 592 N.E.2d at 983 (noting "the *Healy* decision was grounded upon the finding that the defendants negligently performed functions which were uniquely related to their status as State employees. Had the Healy defendants not been government employees, they would have had no duty to supervise the plaintiff's gymnastic activities"). In this case, unlike in *Healy*, the duty of care was not limited to defendant's employment.

Her duty of care extended to any child in her home without regard to whether she was employed to provide care for that child.

## II. DIRECTED VERDICT

■ Plaintiffs argue because there was not a factual issue for the jury to decide the trial court erred by denying their motion for a directed verdict. Defendant argues, however, plaintiffs misstate the law of negligence. She cites *Yager v. Illinois Bell Telephone Co.*, 281 Ill. App. 3d 903, 907, 667 N.E.2d 1088, 1091 (1996), and contends to establish liability on negligence, a plaintiff must show the existence of a duty owed by a defendant to a plaintiff, a breach of that duty, and an injury proximately caused by defendant's breach. Defendant argues although she conceded she owed Cortez a duty, she denied both breaching that duty and proximately causing Cortez's injuries. Defendant concludes two questions of fact existed for the jury: (1) whether the facts constituted a breach of defendant's duty, and (2) whether the purported breach was the proximate cause of Cortez's injuries.

■ This court's review of a trial court's determination on a directed verdict motion is *de novo. City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 633, 668 N.E.2d 601, 604-05 (1996). A court should grant a motion for a directed verdict when, after viewing all the evidence in the light most favorable to the opposing party, the evidence so overwhelmingly favors the moving party no contrary verdict could stand. *Snyder v. Curran Township*, 281 Ill. App. 3d 56, 66, 666 N.E.2d 818, 825 (1996). When evidence and reasonable inferences from that evidence demonstrate a substantial factual dispute, a directed verdict is improper. *City of Mattoon*, 282 Ill. App. 3d at 633, 668 N.E.2d at 605.

■ Upon our examination of the record, we agree with defendant and find the trial court properly denied plaintiffs' motion for a directed verdict. Only when facts are undisputed and reasonable people cannot differ in the inferences drawn from those facts does the question whether a breach occurred become a question of law. See *Yager*, 281 Ill. App. 3d at 908, 667 N.E.2d at 1093. Because reasonable persons could differ on the inferences from the facts, a directed verdict would have been improper.

## III. NEW TRIAL

■ Plaintiffs next argue the jury's verdict was not based on the evidence. Plaintiffs state defendant set the bowl of hot grease where Cortez could have reached it and it is undisputed Cortez suffered severe injuries as a result of the grease spilling on him. From these facts, plaintiffs believe the verdict was against the manifest weight of

the evidence. Defendant argues, however, the trial court did not abuse its discretion in denying plaintiffs' motion for judgment *n.o.v.* because sufficient evidence existed to support the jury verdict.

This court will not disturb a trial court's decision to deny a motion for a new trial absent a clear abuse of discretion. *Albin v. Illinois Central R.R. Co.*, 277 Ill. App. 3d 50, 60, 660 N.E.2d 994, 1001 (1995). When sufficient evidence supports the jury's verdict, a trial court's granting of a motion for a new trial would constitute an abuse of discretion. *Gaines v. Townsend*, 244 Ill. App. 3d 569, 576, 613 N.E.2d 796, 801 (1993).

We find sufficient evidence existed to support the verdict, and thus the trial court did not err in denying plaintiffs' motion for a new trial. The law requires only that a person make a decision a reasonably prudent person would make if in similar circumstances. *Yager*, 281 Ill. App. 3d at 908, 667 N.E.2d at 1092. The evidence supports a verdict defendant did not act unreasonably. Prior to defendant's leaving the grease on the counter, there were no children in the kitchen and all the children were preoccupied with other activities. Cortez, whom defendant characterized as a "stays where he's been put" type of child, was not in the kitchen when defendant left, but playing with an older child in an adjacent bedroom. Defendant left the kitchen for less than a minute. A jury could conclude she did not breach her duty to Cortez.

## IV. OPINION TESTIMONY

 Plaintiffs next argue the trial court erred by refusing to permit the plaintiffs to read from Biggers' deposition her answer to whether she had an opinion "if it would be reasonable for a child-care provider to leave an 18-month-old child in a room unattended where the child could reach \*\*\* hot cooking grease." Plaintiffs argue defendant had been a foster parent for a long period of time and had training and experience in child care and food preparation. Plaintiffs contend the degree of supervision and manner of cooking by a trained and experienced professional is not within the common knowledge of the jury. On the other hand, defendant argues the trial court did not abuse its discretion by excluding this testimony for two reasons: (1) the opinion went to the ultimate issue for the jury to determine and the issue was well within the ken of the jury, and (2) the question assumed facts not in evidence.

An expert witness may generally express an opinion as to the ultimate issue in a case. The test for whether an expert's opinion on the ultimate issue should be admitted is consideration of whether that opinion will aid the trier of fact understand the evidence or

determine a fact in issue. *Nika v. Danz*, 199 Ill. App. 3d 296, 314-15, 556 N.E.2d 873, 886 (1990). The trial court has wide discretion in its determination whether the expert's testimony will aid the jury in its understanding. *Schultz v. Richie*, 148 Ill. App. 3d 903, 909, 499 N.E.2d 1069, 1072 (1986).

We find the trial court did not err. The trial court's determination the jury could understand the evidence and determine the fact in issue without the expert's opinion was not an abuse of discretion. Additionally, we note the question posed to Biggers indicates the child was in the kitchen when defendant left the room. The unrefuted testimony establishes the child was in the bedroom at that time.

## V. DISPLAY OF CHILD TO JURY

Plaintiffs last argue the trial court erred by not permitting plaintiffs both to introduce photographs of Cortez and to allow the jury to view Cortez. Plaintiffs cite *LeMaster v. Chicago Rock Island & Pacific R.R. Co.*, 35 Ill. App. 3d 1001, 343 N.E.2d 65 (1976), and *Sparling v. Peabody Coal Co.*, 59 Ill. 2d 491, 322 N.E.2d 5 (1974), and contends the introduction of photographs is proper although the injury was also exhibited to the jury. Defendant contends, however, this issue goes to damages and is thus irrelevant if this court upholds the jury verdict on liability. In the alternative, defendant argues the court's decision was a proper exercise of discretion because the evidence was cumulative.

We need not address this issue because we find the verdict on liability to be supported by the evidence. This issue is thus irrelevant. We note plaintiffs' argument would have failed on the merits. The photographs were taken a few months before trial and counsel indicated no change in the injuries occurred since the photographs were taken. The jury saw the photographs and thus was not deprived of viewing the injuries. Given the cumulative nature of both the photographs and the display of the child, we find no abuse of discretion occurred.

## VI. PARENTAL IMMUNITY

Defendant raised the issue of parental immunity in her section 2—619 motion to dismiss. In support of her motion, defendant argued irrespective of which court had jurisdiction, the negligence action was barred by parental immunity. She argued because foster parents stand *in loco parentis*, they are entitled to the same immunity as natural parents. Defendant did not raise this issue on appeal.

Unlike sovereign immunity, the existence of parental immunity does not destroy subject-matter jurisdiction in the circuit courts. We need not address the interesting and complex issue of parental im-

munity, because defendant ultimately prevailed on the merits of the case. We only mention the issue here in light of *Commerce Bank v. Augsburger*, 288 Ill. App. 3d 510, 517, 680 N.E.2d 822, 827-28 (1997), in which this court held the doctrine of parental immunity extends to foster parents in certain circumstances.

Affirmed.

GARMAN, P.J., concurs.

JUSTICE COOK, specially concurring:

It is difficult to understand the sovereign immunity argument in this case. The named defendant is Joeannier Smith, not the State of Illinois. Nevertheless, the Attorney General entered his appearance for defendant in the trial court and argued that the suit was really one against the state, which had to be brought in the Court of Claims. A judgment against Smith in the circuit court could potentially be collected from Smith. If the Attorney General had stayed out of the case, he could have argued, after the judgment, that there was no judgment against the state, only one against Smith. Why did the Attorney General take over Smith's defense and argue that the suit belonged in the Court of Claims, where only the state, and not Smith, could be held liable?

The answer seems to be that the state will be liable for any judgment against Smith whether or not this action is considered to be one against the state. The state will be liable for indemnification under the State Employee Indemnification Act (5 ILCS 350/1 *et seq.* (West 1994)). That is the reason the state entered its appearance for defendant Smith. It does not make sense to require that cases where the state is required to indemnify its employees be brought in the Court of Claims. State employees cannot be sued in the Court of Claims and, without a judgment against the employee, the state will never have any duty to indemnify. *Brinegar v. Reeves*, 289 Ill. App. 3d 405, 406-07, 681 N.E.2d 1080, 1082 (1997); see K. Beyler & P. Kelley, *Jurisdiction and Immunity in Suits Against State Employees after Healy v. Vaupel*, 79 Ill. B.J. 612, 617 (1991); *cf. Oppe v. State of Missouri*, 171 Ill. App. 3d 491, 493-94, 525 N.E.2d 1189, 1191 (1988). We should recognize this case as an indemnification case and reject the argument for exclusive Court of Claims jurisdiction on that basis. Whether or not the state is liable for indemnification, plaintiffs should have an opportunity to seek a judgment against Smith and that judgment must be sought in the circuit court.