In re MARRIAGE OF MARIO CIANCHETTI, JR., Petitioner-Appellant, and DARLENE CIANCHETTI, n/k/a Darlene Martin, Respondent-Appellee.

Third District   No. 3—03—0518

Opinion filed August 19, 2004.

Frank P. Andreano (argued), of Dunn, Martin & Miller, Ltd., of Joliet, for appellant.

Roy A. Sabuco and John V. Schrock (argued), both of Sabuco, Beck, Hansen & Schrock, of Joliet, for appellee.

JUSTICE McDADE delivered the opinion of the court:

In this case from the circuit court of Will County, the petitioner, Mario Cianchetti, appeals from an order requiring him to pay 50% of the tuition and fees necessary to send his two daughters to private college in Chicago. He argues that the amount, in excess of $15,000, is more than he can afford and that it was an abuse of discretion for the court to impose the requirement. He also argues that the court erred in preventing him from presenting the testimony of Daniel Kriedler, an alleged expert in college expenses and education financing. For the reasons that follow, we affirm.

## BACKGROUND

The Cianchettis were divorced in 1988. At the time, Mario was awarded custody of the two daughters of the marriage, Echo and Felicia. The children lived with Mario until they were seniors in high school, when they moved out of his home and moved in with their mother, Darlene Martin.

Although the children were educated in public school through their grade school years, when they were old enough, Mario enrolled them in Marian Catholic High School.

Mario's expenses/income affidavit reveals that he nets $4,123.09

per month, with expenses of $4,248.53, leaving him with a deficit of $125.44. This calculation does not include the $7,400 tax refund Mario received in 2002, which is equal to $616 a month in additional income for that year.

The Cianchetti daughters intend to attend Columbia College in Chicago. Echo has already begun her schooling at Columbia, and studies theatre, while Felicia intends to study dance. Both programs offer internships and other opportunities for participation in the arts community of Chicago. Other schools in the area do not offer similar programs. Echo had already completed one year at Columbia prior to the ruling in this case, although it is unclear how she paid the tuition.

Annual tuition at Columbia is $13,914 for each of the girls. Books, supplies and fees bring the total cost for Columbia to approximately $15,000 per year. This amount does not include room and board. The sisters intend to live together in Chicago and will pay for housing and other living expenses through their own savings. In 2002, Echo earned approximately $14,373, and she has savings of around $2,200. Both girls have around $1,800 each in bonds.

Darlene Martin has an income of approximately $42,000 a year, most of which she uses to pay for incidental expenses related to the girls, like shopping trips and vacations. In addition, her new husband, Kevin Martin, nets roughly $140,000 per year.

Mario had attempted to call Daniel Kriedler as an expert witness at the hearing on the matter. Mr. Kriedler would have testified about other educational programs available to the girls and would have discussed educational costs and alternative methods of funding the expenses. The trial court rejected the evidence, stating that it was not relevant, since Kriedler had not done comparisons with other programs substantially similar to that offered at Columbia College. Following the hearing, the trial court found that Mario could afford to pay half of the combined tuition of both girls to Columbia College and set the amount at $15,000 a year.

## ANALYSIS

A trial court's decision to award educational expenses will be overturned only if it is against the manifest weight of the evidence. *In re Marriage of Hillebrand*, 258 Ill. App. 3d 835, 840-41, 630 N.E.2d 518, 522 (1994). A decision is against the manifest weight of the evidence when the opposite conclusion is clearly evident or where it is unreasonable, arbitrary or not based on the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13 (1992).

■ Section 513 of the Illinois Marriage and Dissolution of Marriage Act authorizes the trial court to order a parent to pay for the

educational expenses of a child of majority age. 750 ILCS 5/513(a) (West 2002). In making the decision whether to order the payment of educational expenses, the court should consider all "reasonable and necessary" factors, including: (1) the financial resources of both parents; (2) the standard of living the child would have enjoyed had the marriage not been dissolved; (3) the resources of the child; and (4) the child's academic performance. 750 ILCS 5/513(b) (West 2002).

The petitioner first alleges that he is not in a financial position to pay the tuition. A party should not be required to pay more for a child's college tuition than he can afford. *In re Support of Pearson*, 111 Ill. 2d 545, 552, 490 N.E.2d 1274, 1277 (1986).

Mario's financial affidavit alleges that, at the rate at which he currently spends money, he finds himself in deficit of approximately $120 at the end of each month. The affidavit does not factor in Mario's 2002 tax refund of $7,400, which effectively increased Mario's monthly income for one year by around $616. In any event, Mario does not have much more than $500 of disposable income per month, or $6,000 per year. Darlene argues that since Mario could afford to send his daughters to private high school, he should be able to send them to a private college. Mario asserts that he mortgaged his house, following the failure of his business, to pay the approximately $12,000 Marian Catholic tuition for the girls. That money would not be available for future tuition payments.

Darlene, on the other hand, makes $42,000 per year, most of which is disposable income. Her husband is a commercial pilot and makes around $140,000 per year. Although Darlene's new husband is not obligated to pay for her children's tuition, and his income should not be used to determine her ability to pay tuition, it is properly used to examine the extent to which her income can be freed through reliance on her husband for support. *Street v. Street*, 325 Ill. App. 3d 108, 114 758 N.E.2d 887, 891-92 (2001). Darlene's husband, Kevin Martin, makes a substantial amount of money as a pilot and is able to provide Darlene with significant support. In fact, Mario alleges that Kevin's support is so significant that it allows Darlene to spend most of her income on shopping trips, cheerleading camps, cellular phone bills, and other discretionary expenses for the girls. Darlene's brief does not dispute the allegation. In all, it appears that Darlene can afford to pay a significant portion of the tuition expenses of the children.

It is not clear whether the children would have enjoyed a standard of living sufficiently affluent to afford the tuition at Columbia College had their parents remained married. The mother now makes about $42,000 per year, while the father makes around $75,000. Darlene's income is deceptively low, however, since she can rely on her new

husband's income for her support. It is probably accurate to say that the children enjoy a higher standard of living now than they would have if their parents had remained married, since they have the benefit of their father's income and a higher proportion of their mother's income than would otherwise be the case in the absence of Kevin Martin's income.

Echo and Felicia have significant economic resources themselves. Both have jobs and save money. In fact, Darlene proposes that the children will pay for their own room and board in Chicago while attending Columbia. The question remains why the children cannot use part of that money to pay tuition and live at home. In that circumstance, the housing is free, but there would be daily transportation expenses. Darlene's brief does not answer this question, except to state that the children would prefer to live in Chicago.

With respect to the final factor, the girls' academic performance, we are not presented with any evidence of their grades in either high school or college. We are told, however, that while Echo was not a good student in high school, she has performed well in her first semester at Columbia College. In addition, Darlene argues that Columbia College is well suited to her daughters' studies, since it has well-regarded programs i theatre and dance that feature internship opportunities in the Chicago arts community.

Mario argues that, in addition to the factors stated in section 513(b), the court should adhere to an alleged preference in the cases for public schools over private. In support, he cites *Plaster v. Plaster*, 47 Ill. 290 (1868); *In re Marriage of Brust*, 145 Ill. App. 3d 257, 261-62, 495 N.E.2d 133, 136 (1986), and *In re Support of Pearson*, 111 Ill. 2d 545, 551-52, 490 N.E.2d 1274, 1277 (1986).

In *Pearson*, the supreme court ordered that the original trial court order requiring the respondent to pay $100 per month for his son's post-high-school tuition be reinstated, and reversed an order of the appellate court requiring the respondent to pay $5,150 a year for two years. The court found that private school tuition, upon which the appellate decision was based, was an inappropriate benchmark for determining the tuition award, especially when there were less expensive state institutions and where there was no showing that the private institution was superior to the state institution. *Pearson*, 111 Ill. 2d at 551-52, 490 N.E.2d at 1277. Nevertheless, there were other considerations in that case that weighed on the court's decision, such as the low income of the respondent and the fact that the respondent's other children received less for their tuition. *Pearson*, 111 Ill. 2d at 552, 490 N.E.2d at 1277-78.

In the instant case, the factors could be seen as supporting Mario's

case. The girls have substantial savings of their own and can afford to pay some of their own tuition. Nevertheless, they would rather use the savings to live in Chicago. As Mario points out, an apartment in Chicago is not necessary to the girls' education. In addition, Darlene's financial position is far better than her $42,000 salary would indicate. She may rely on her new husband's income for her expenses and presently uses her income for shopping trips and vacations for herself and the girls. Finally, while the programs in dance and theatre at Columbia College offer a number of unique opportunities, there is no evidence to show that there are no similar state programs. Also, the internships that the girls wish to take advantage of do not begin until junior year, and as Mario points out, the girls could attend a cheaper state program until then.

However, this court must defer to the discretion of the trial court in this matter. *Hillebrand*, 258 Ill. App. 3d at 840-41, 630 N.E.2d at 521. While it would be difficult for Mario to pay for his children's education at Columbia College, it does seem that he can afford it, especially since he was able to pay for the girls' tuition to private high school, at $12,000, and make child support payments, at $15,000. Mario argues that he was forced to mortgage his house to pay his child support obligations. This does not explain how Mario was able to pay the tuition to Marian High, however. That tuition is not substantially less than the amount he is being asked to pay here. He is, of course, no longer obligated for those payments. Examined for an abuse of discretion, the trial court's decision was not clearly unreasonable under the circumstances.

Mario also argues that it was error for the trial court to refuse to hear the expert testimony of Daniel Kriedler, who was offered to testify about the cost of higher education, funding college education and resources available to college students. The trial court barred the testimony because Kriedler had not done a comparison between the programs offered at Columbia and similar programs offered at other institutions. Specifically, the court noted that Kriedler had not identified any programs with similar internship opportunities. The court felt that Kriedler's testimony would not be relevant, since a comparison between schools could not be made.

The trial court is granted broad discretion in determining whether to admit expert testimony and may do so when the testimony will aid the trier of fact on a topic beyond the ken of the average person. *Swanigan v. Smith*, 294 Ill. App. 3d 263, 273-74, 689 N.E.2d 637, 644 (1998). Mario argues that the court abused its discretion by refusing to allow the evidence because it was not necessary for Kriedler to draw comparisons between similar programs.

Mario has not demonstrated an abuse of discretion. While the court could have admitted the evidence, it was not required to do so. Kriedler could not draw comparisons between Columbia College and other programs offering similar programs in theatre and dance. The court's decision that the evidence would not aid the trier of fact was not an abuse of discretion.

## CONCLUSION

■ The evidence, to some degree, supports Mario's argument that he is being required to pay too much for his daughters' tuition to Columbia College. It indicates that he will have to work hard to fit a $15,000 expense into his budget. Nevertheless, he was able to make similar payments for high school expenses and child support. Despite some evidence to support Mario's position, we cannot find that the trial court abused its discretion in ordering the tuition payments.

In addition, the court did not err in refusing the expert testimony of Daniel Kriedler. The comparisons Kriedler attempted to draw were with programs that were not similar to the program offered at Columbia and were of limited probative value. The order of the circuit court of Will County ordering educational expenses is affirmed.

Affirmed.

SLATER and BARRY, JJ., concur.